IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT MOORE, ) | |
| ) | No. 16 C 11669 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the U.S. Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Robert Moore has filed a motion for summary judgment seeking reversal or remand of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income benefits ("SSI") (doc. # 23: Pl.'s Mot. for Summ. J.). The Commissioner has filed a motion seeking affirmance of the decision denying benefits (doc. # 25), and claimant has filed a reply (doc. # 30). For the following reasons, we grant Mr. Moore's motion and remand the case.

### I.

Mr. Moore filed his claim for benefits on September 19, 2013, claiming a disability due to high blood pressure, diabetes, depression, "feet," and "mental" (R. 101). He alleged an onset date of January 24, 2013 (*Id.*). His claim was initially denied on December 5, 2013 and on

---

[1] On February 9, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 10).

reconsideration on August 29, 2014 (R. 107, 125). Mr. Moore then appeared at a hearing in front of an Administrative Law Judge ("ALJ") on April 8, 2016 (R. 27-61). On June 6, 2016, the ALJ ruled that Mr. Moore was not disabled, and Mr. Moore filed a request for review (R. 7-26). On October 27, 2016, the Appeals Council upheld the ALJ's determination, making the ALJ's determination the final opinion of the Commissioner (R. 1-6). *See* 20 C.F.R. § 404.981; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## I.

Mr. Moore was born on February 22, 1959 (R. 101). He is an army veteran who was honorably discharged after one year of service; he receives the majority of his medical treatment through the Veterans Administration ("VA") (R. 37, 77-80). The parties do not dispute that Mr. Moore has a longstanding problem with alcohol abuse (R. 31-33). As we explain below, the lead issue on which we grant summary judgment concerns the ALJ's analysis of Mr. Moore's impairments and how they affect his ability to work both when abusing alcohol and when sober.

Beginning at least as early as 2009, Mr. Moore visited the Jesse Brown VA hospital regularly for treatment of a number of health conditions, including diabetes, high blood pressure, pancreatitis, depression, post-traumatic stress disorder, and alcoholism (*see generally*, R. 268-270, 299, 305-340, 527-550).[2] On May 16, 2011, Mr. Moore underwent a consultative examination with Sujatha Neerukonda, M.D., in connection with his first claim for benefits (R. 498-506). Mr. Moore's physical health was mostly normal, but with respect to his mental health, Dr. Neerukonda noted that Mr. Moore reported being too depressed to leave his apartment (R. 500) Dr. Neerukonda assessed Mr. Moore's affect as "significantly depressed" and noted that he

---

[2] The record shows that Mr. Moore previously filed for disability benefits in 2010; that request was denied, although we do not have copies of any of the decision-making documents from that claim (R. 102). However, the ALJ here relied on some of the consultative examination notes and opinions connected to Mr. Moore's earlier claim for benefits, which we describe when relevant to our decision.

2

did not make eye contact, was passively cooperative, distant, and guarded, and his hygiene and grooming were good (*Id.*).

Also on May 16, 2011, Mr. Moore underwent a mental health consultative examination with Patricia Morrin, Psy.D. (R. 507-511). Dr. Morrin noted that Mr. Moore was appropriately groomed, cooperative and polite (R. 507). Mr. Moore reported that he drank alcohol daily, that he did not like to be around other people, and that he only enjoyed drinking alcohol (R. 508-09). Dr. Morrin assessed Mr. Moore as having a downcast mood and moderately depressed affect (R. 511). She diagnosed alcohol dependence and substance induced mood disorder (*Id.*). Neither Dr. Neerukonda nor Dr. Morrin opined on whether Mr. Moore was able to work.

Mr. Moore continued to visit the VA for treatment of his various physical and mental health issues. Medical records from June 2011 through January 2012 document his continued alcohol abuse and disinterest in seeking treatment for his alcoholism (R. 628, 635, 651). In July and August 2011, Mr. Moore visited the VA complaining of "depression from isolation," reporting that he had been depressed "for years" (R. 639-40, 655). He was diagnosed with depressive disorder, alcohol-induced mood disorder, and alcohol abuse (R. 646). During this time, Mr. Moore's diabetes was not well-controlled, in part because of his pancreatitis; progress notes indicate that his pancreatitis and liver problems were a direct result of his drinking (*see generally*, R. 636-62).

On July 21, 2013, Mr. Moore was hospitalized for two days for acute pancreatitis, likely caused by his drinking (R. 767, 770). Intake notes from his visit to the emergency room note that Mr. Moore had a similar episode in 2010 (*Id.*, 771). After being released from the hospital on July 23, 2013, Mr. Moore began an outpatient alcohol treatment program; VA progress notes indicated he was discharged from the program for "noncompliance" on September 3, 2013, and

3

was reinstated, at his request, on September 18, 2013 (R. 794). After being reinstated in the program, Mr. Moore stopped drinking until early 2014 (R. 750-762, 797, 836).[3]

Medical records from Mr. Moore's monthly appointments at the VA show that he reported abstaining from alcohol from approximately October 2013 to January 2014 (R. 797, 808). The records indicate that Mr. Moore was aware of the way that his alcoholism affected his physical health, and that he was in generally good spirits (*Id.*). However, in response to a mental health diagnostic study performed in November 2013, Mr. Moore indicated that he felt "depressed, anxious, angry or very upset" and had trouble sleeping 9 to 15 days per month (R. 806). Mr. Moore relapsed and began drinking again around late January 2014 (R. 814-17, 836). Although other medical records discuss renewing Mr. Moore's treatment plan, it is not clear from the medical record if or when he reentered an alcohol treatment program, or how much or often he was drinking after February 2014 (R. 794-797, 839, 845).

On July 25, 2014, Mr. Moore underwent a mental health consultative exam with Edmond Yomtoob, Psy.D. (R. 894-96). Dr. Yomtoob described Mr. Moore as uncooperative during the examination, but stated that he obtained enough information to make an assessment (R. 894). Mr. Moore told Dr. Yomtoob that he experienced depression during the day and sometimes heard voices in his head (R. 895). Dr. Yomtoob diagnosed Mr. Moore with alcohol abuse and depressive disorder, and suggested additional testing to rule out post-traumatic stress disorder and antisocial traits (*Id.*).[4] Dr. Yomtoob agreed that Mr. Moore had some mental health issues, but also stated that "his overriding difficulty may be that of alcohol abuse" (*Id.*). Given Mr.

---

[3] It is not clear from the record when Mr. Moore began drinking again; a progress note from June 2014 states that he was drinking, but does not include a start date (R. 836).

[4] In fact, screening for post-traumatic stress disorder in June 2014 was positive (R. 782).

Moore's alcoholism, Dr. Yomtoob also stated that Mr. Moore would not be a good candidate for managing his funds (R. 896).

The medical record is then silent until July 2015, when Mr. Moore was hospitalized at Norwegian American Hospital with acute pancreatitis; he reported on admission that he had been drinking as recently as two days previously (R. 899-903).

## II.

At the hearing in April 2016, Mr. Moore testified that he has daily pain from his pancreatitis (R. 36). Mr. Moore testified that he takes medication for depression and nightmares, and that he constantly has pain in his hands and feet; on some days, his feet swell up, preventing him from wearing shoes (R. 38-39). His doctor believes that the pain in his hands and feet is diabetic nerve pain (*Id.*). Mr. Moore testified that he drinks when he gets depressed, and that the medication he takes for depression does not help (R.42). He had last had a drink five days before the hearing, when he drank a six-pack of beer (*Id.*). He also testified that his physical impairments, including his pancreatitis and diabetic nerve pain and swelling, do not improve when he stops drinking (R. 42-43).

The ALJ gave the vocational expert ("VE") a hypothetical for an individual who could lift or carry 20 pounds occasionally and 10 pounds frequently; could sit, stand, or walk for six hours; could never climb ladders, ropes, or scaffolds; and who was limited to performing simple, routine tasks and making simple work-related decisions, and being around the public only occasionally (R. 56). The VE testified that such a person could perform Mr. Moore's past work as a street cleaner as well as the work of a small products assembler, a packaging machine operator, or a production inspector (R. 57). However, when the ALJ added the additional limitations of being off-task 15 percent or more during an eight-hour work day in addition to

5

normal breaks, and being absent two or more days per month, the VE testified that these limitations would eliminate all jobs (R. 59).

## III.

In his opinion, the ALJ concluded that Mr. Moore was under a disability, but that substance abuse was a contributing factor material to such disability (R. 13). The ALJ determined that if Mr. Moore stopped abusing alcohol, he would be able to work (*Id.*). For that reason, the ALJ found that Mr. Moore was not disabled (*Id.*).

When assessing Mr. Moore's claims of disability including the alcohol abuse, the ALJ found that Mr. Moore had the severe impairments of alcohol dependency, gastritis/acute pancreatitis, renal and uteral disease, and depression/post-traumatic stress-disorder ("PTSD") (R. 15). These impairments did not rise to the Listing level (R. 16). The ALJ found that Mr. Moore's other impairments of diabetes, polyneuropathy and high blood pressure were non-severe because they caused no more than minimal limitations of his ability to perform basic work-related activities (*Id.*).

With respect to Mr. Moore's mental health, the ALJ found that, when he was using alcohol, Mr. Moore had moderate restrictions in activities of daily living ("ADL"), social functioning, and concentration, persistence and pace, and no episodes of decompensation (*Id.*) ("Paragraph B analysis"). The ALJ assessed Mr. Moore's residual functional capacity ("RFC") as being able to perform light work, but with the additional limitations of not being able to climb ladders, ropes, or scaffolds, performing only simple, routine tasks and making simple work-related decisions. Additionally, Mr. Moore could have only limited interaction with the public (*Id.*). However, Mr. Moore would be unable to engage in full-time work while he was abusing

alcohol because, in addition to normal breaks, Mr. Moore would be off-task 15 percent of the work day and be absent at least two days per month (R. 17).

As evidence to support his RFC, the ALJ cited to records describing Mr. Moore's hospitalizations for pancreatitis flare-ups caused by heavy drinking, as well as Dr. Yomtoob's consultative examination (which found Mr. Moore to have an irritable mood, poor insight, poor grooming and hygiene, and an inability to manage funds) (*Id.*). The ALJ also again pointed to Dr. Yomtoob's examination as evidence that, when he is abusing alcohol, Mr. Moore's mental health issues make him unable to engage in full-time work activity (*Id.*).

Next, the ALJ analyzed Mr. Moore's claims assuming that Mr. Moore stopped abusing alcohol (R. 18). The ALJ found that if Mr. Moore stopped drinking, his remaining impairments would still be severe, but that under a Paragraph B analysis, he would only have mild restrictions in ADLs, although he would still have moderate restrictions in social functioning and concentration, persistence and pace (R. 19). As evidence, the ALJ stated that treatment records indicate a relatively normal mental status when claimant's alcohol abuse is in remission (*Id.*).

The ALJ then reassessed Mr. Moore's RFC absent alcohol abuse. The ALJ concluded that the same RFC would apply, except that the ALJ removed the limitations of being off-task 15 percent of the work day and absent two days per month (*Id.*).

To support this RFC, the ALJ noted that Mr. Moore had experienced no hospitalizations for pancreatitis when not drinking and pointed to the "relatively benign" physical examination by Dr. Neerukonda in May 2011(*Id.*). With respect to Mr. Moore's mental impairments, the ALJ summarized Dr. Morrin's May 2011 examination of Mr. Moore (which observed that he had good hygiene, maintained eye contact, was polite, had relevant and coherent speech and intact thought processes, with a moderately depressed mood and affect) as evidence that his mental

7

health would not prevent him from working when he was not abusing alcohol (R. 21). The ALJ also cited generally to two extensive sets of progress notes from the VA hospital during Mr. Moore's four months of sobriety, saying that they reveal that when Mr. Moore was not abusing alcohol, he was alert and fully oriented, and had no homicidal or suicidal tendencies (*Id.*). Finally, the ALJ briefly mentioned the opinions of the state disability examiners, who opined that Mr. Moore did not have any severe impairments, and thus did not reach the question of whether he was able to work (*Id.*). Ultimately, the ALJ concluded that, even when not abusing alcohol, Mr. Moore still had some limitations, but they did not preclude all levels of basic work-related activities (*Id.*).

## IV.

We review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (internal citations omitted). We do not reweigh evidence or substitute our own judgment for that of the ALJ. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). However, in rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Under the Act, "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Thus, when an applicant for disability benefits is a substance abuser and also has other, disabling impairments, the ALJ must determine

8

whether, were the applicant not a substance abuser, he would still be disabled. 20 C.F.R. § 404.1535(b)(1); *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006); *Alma v. Berryhill*, No. 16 C 2035, 2017 WL 2936707 at *4 (N.D. Ill. July 10, 2017). In making this determination, the ALJ must "adequately disentangle[ ] the effects of [the claimant's] drug abuse from those of h[is] other impairments." *Harlin v. Astrue*, 424 Fed.Appx. 564, 568 (7th Cir. 2011).

Mr. Moore argues that the ALJ erred in finding him not disabled for several reasons. We focus on two of them, which we find require remand in this case: (1) substantial evidence does not support the ALJ's determination of Mr. Moore's RFC; (2) the ALJ erred in his analysis of the effects of Mr. Moore's alcoholism.

When evaluating a claimant who engages in substance abuse, an ALJ must first determine the claimant's abilities when he is *not* sober, and must then determine the claimant's ability to work assuming the claimant was not engaged in substance abuse. 20 C.F.R. § 1535(a). The ALJ here followed these two general steps in the process. The ALJ found that when abusing alcohol, Mr. Moore would have moderate limitations in his activities of daily living, in his social interactions, and with concentration, persistence, and pace, and he would be off task 15 percent of an eight-hour work day, and would miss two days of work per month. After eliminating the impact of alcohol abuse, the ALJ found that Mr. Moore would still have these limitations (including moderate limitations in concentration, persistence and pace), but would not miss two days of work each month or be off task for 15 percent of the work day. These determinations of Mr. Moore's RFC without the impact of alcohol abuse were not supported by substantial evidence.

9

## A.

The ALJ concluded that Mr. Moore is unable to work when abusing alcohol, in part because Mr. Moore would be off-task 15 percent of the work day. According to the VE, this limitation, along with two absences per month, would preclude all full-time employment. But the ALJ neither explained how he determined the 15 percent number in the first place, nor discussed why Mr. Moore's mental impairments would not cause him to be similarly off-task when not drinking. *See, Stepp v. Colvin,* 795 F.3d 711, 718 (7th Cir. 2015) (ALJ's conclusion must be supported with substantial evidence). The ALJ relies primarily on Dr. Yomtoob's assessment as evidence that Mr. Moore would not be able to work while he was abusing alcohol. But that assessment contains no discussion of whether or for how long Mr. Moore would be off-task during the work day, whether because of Mr. Moore's alcoholism or – independently – because of Mr. Moore's depression that Dr. Yomtoob also diagnosed.

The ALJ referenced different evidence to support his finding that, absent alcohol abuse, Mr. Moore's mental health impairments would not prevent him from working; this evidence is similarly silent on Mr. Moore's ability to stay on-task. The ALJ pointed generally to VA records from Mr. Moore's four months of sobriety, saying they note that he was fully alert and oriented during examinations during that time, as well as to Dr. Morrin's May 2011 examination, which assessed Mr. Moore as cooperative, polite, and with thought processes that were intact but slowed. But we can find nothing in these records to support the finding that Mr. Moore would be off-task 15 percent of the work day when drinking but not when sober. Indeed, evidence the ALJ failed to mention suggests the opposite, such as the November 2013 mental health assessment, which reported that Mr. Moore complained about feeling depressed and unable to sleep 9-to-15 days each month even when not drinking. *See, e.g., Gerstner v. Berryhill,* 879 F.3d 257, 261-62

(7th Cir. 2018) (ALJ may not select only portions of medical record that support his opinion while ignoring those that contradict it). The ALJ failed to build a "logical bridge" from the evidence to his conclusion that Mr. Moore would be off-task 15 percent of the work day when abusing alcohol but not when he was sober. *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2015).

**B.**

The ALJ assessed Mr. Moore as having moderate limitations in concentration, persistence, and pace both when abusing alcohol and when sober. Because the ALJ concluded that Mr. Moore did have such limitations, he was required to fashion an RFC that accounted for them. *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015). While an ALJ need not specifically use the words "concentration, persistence and pace" in his hypothetical to the VE, the record must show the VE's familiarity with the claimant's limitations, either because the VE independently reviewed the medical record or heard testimony directly affecting those limitations. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010).

The Commissioner argues that the ALJ's hypothetical to the VE and the RFC he found adequately addressed Mr. Moore's moderate limitations in concentration, persistence and pace by limiting him to jobs "that included only simple, routine tasks; [and] required only simple work-related decisions (Def. Mem. at 8). We disagree.

The ALJ's hypotheticals both asked the VE about a person capable of performing simple, routine tasks and making simple work-related decisions. These terms refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days. *See* 20 C.F.R. §§ 404.1568, 404.1520. As the Seventh Circuit has repeatedly stated, "the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e.,

11

difficulties maintaining concentration, persistence, or pace—can perform such work." *Lanigan v. Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017).

In this case, neither of the ALJ's hypotheticals to the VE specified that Mr. Moore had moderate limitations in concentration, persistence and pace. One might argue that the first hypothetical, which described the amount of time Mr. Moore would be off-task during the work day, conveyed that limitation to the VE. But the second hypothetical removed the off-task limitation, without conveying to the VE (as the ALJ later found) that even without that specific limitation Mr. Moore still would have moderate limitations in concentration, persistence and pace. And, we have no evidence that the VE was otherwise familiar with that moderate limitation from the record or from Mr. Moore's testimony. *See, Brinley v. Berryhill*, No. 17-1706, 2018 WL 2214082 *3 (7th Cir. May 15, 2018) (Remand where ALJ failed to use term "moderate difficulties with social functioning" in hypothetical and court could not conclude that the limitation was otherwise accounted for in the RFC).

## CONCLUSION

For the foregoing reasons, we grant claimant's motion for summary judgement (doc. # 23), and deny the Commissioner's motion (doc. # 25). We remand the case for further proceedings consistent with this memorandum opinion and order. This case is terminated.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**DATE: May 22, 2018**